IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MIGUEL REYES d/b/a PUEBLA MINI
MARKET LLC,

          Plaintiff,

    v.

UNITED STATES OF AMERICA,

          Defendant.

CIVIL ACTION
NO. 13-1825

## MEMORANDUM OPINION

**SCHMEHL, J.**                                                                 **OCTOBER 23, 2013**

### I.  INTRODUCTION

Before the Court is the Motion for Summary Judgment of Defendant, United States of America ("Defendant" or "the Government"), the response of Plaintiff, Miguel Reyes d/b/a Puebla Mini Market ("Plaintiff" or "the Market"), and the Government's Reply. Plaintiff filed this civil action, pursuant to 7 U.S.C. § 2023, seeking judicial review of the Government's decision to permanently disqualify the Market from participation in the Supplemental Nutrition Assistance Program ("SNAP") due to the Market's trafficking of food stamps. The Market argues that the disqualification decision was arbitrary and capricious and that the Government should have imposed a civil monetary penalty instead; Plaintiff also argues that its procedural due process rights were violated. The Government contends that the decision to permanently disqualify the Market was proper because the Market cannot satisfy the necessary criteria for imposition of a monetary penalty instead of disqualification. For the following reasons, summary judgment is granted in favor of Defendant.

**II.     FACTS**

The following facts are not in dispute and are construed in the light most favorable to Plaintiff.  Mr. Reyes owns and operates Puebla Mini Market, a small grocery store located in Reading, Pennsylvania. (A.R. at 1-2.)  In 2010, the Market was authorized to participate in the Supplemental Nutrition Assistance Program by the Department of Agriculture. (A.R. at 43.)  In October 2012, the Department of Agriculture investigated the Market to make sure it was in compliance with SNAP regulations.  With the assistance of a confidential informant, an investigator visited the Market on four separate occasions. (A.R. at 47.)  On the first two visits, the Market permitted the confidential informant to purchase non-food items with SNAP funds.[1]  (A.R. at 50, 53.)  On the next two visits, an employee of the Market provided cash in exchange for food stamps and retained additional food stamps as a premium. (A.R. at 48.)  Specifically, on October 15, 2012, the confidential informant asked the employee for $10.00 in cash. (A.R. at 57.) The employee gave the informant $10.00 in cash and charged an extra $2.25 to the debit card that contained the food stamp funds. (A.R. at 48, 57.)  On this date, the employee also accepted food stamps for non-food items. (A.R. at 57.)  Further, on October 19, 2012, the informant again requested cash, and an employee of the Market gave the informant $20.00 in cash and charged an extra $11.60 to the food stamp debit card. (A.R. at 47, 58, 60.)

Pursuant to a letter dated December 4, 2012, the Market was charged with trafficking and accepting food stamps in exchange for ineligible merchandise in violation of SNAP regulations, 7 CFR § 278.6(e)(1). (A.R. at 44.)  The charge letter informed the

---

[1] Non-food items such as sponges, household cleaners and air freshners are not eligible for purchase under SNAP.

Market that trafficking carries a sanction of permanent disqualification from the food stamp program, and that the Market could request a lesser monetary penalty in lieu of permanent disqualification. (Id.) The letter further advised the Market that to be eligible for the monetary penalty, the store "must meet each of the four criteria" set forth in 7 CFR § 278.6(i). (Id.) The letter informed Plaintiff that it could respond in phone or in writing within ten days, but that "[n]o extension of time can be granted for making a request for a [civil monetary penalty] or for providing the required documentation." (Id.)

The Market, through its attorney, responded to the charge letter via a letter dated December 10, 2012, saying that the Market "would like to submit a timely reply" to the charge letter. (A.R. at 63.) The ten-day deadline passed without the Government receiving any further response from the Market. Finally, on January 2, 2013, the Government notified the Market that it was being permanently disqualified from participation in SNAP due to trafficking. (A.R. at 64.) The Market was informed that a civil monetary penalty was not available to it because it had "failed to submit sufficient evidence to demonstrate that [it] had established and implemented an effective compliance policy and program to prevent violations" of SNAP. (Id.) The Market's attorney sent the Government a letter on January 14, 2013, stating that the Market did not have the opportunity to respond to the charges against it, and that the SNAP services were discontinued "without any prior notice." (A.R. at 68.)

On January 30, 2013, the Market appealed the permanent disqualification, and after being granted an extension, submitted a reply to the trafficking charges, requesting a civil monetary penalty instead of the disqualification. (A.R. at 71-72, 80-83.) On March 8, 2013, an administrative review officer issued a final agency decision, sustaining the

permanent disqualification. (A.R. at 138-142.) Specifically, the review officer rejected each of Plaintiff's contentions and found that none of them provided a basis for a monetary penalty. (A.R. at 140.) The review officer noted that the fact that Plaintiff was a first-time violator did not entitle it to a lesser penalty and that the Market's economic hardship argument did not allow for a lesser penalty under the regulations. (A.R. at 140-141.) The review officer also examined the Market's argument that it was a specialty food store and therefore, it would be a hardship to the community for it to be disqualified from SNAP. The officer found that the regulations do not allow a monetary penalty as opposed to a disqualification based on community hardship, and therefore, upheld the permanent disqualification. (A.R. at 141.) On April 8, 2013, the Market filed the instant lawsuit challenging the disqualification.

### III. LEGAL STANDARD

Summary judgment should be granted if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(a). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. See also Sommer v. The Vanguard Group, 461 F.3d 397, 403-04 (3d Cir. 2006).

SNAP provides for judicial review of any final agency decision for an aggrieved party. 7 U.S.C. § 2023(a)(13). The statute states that this judicial review "shall be by a

trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue..." 7 U.S.C. § 2023(a)(15).  In addition, it has been held that summary judgment is a proper means of disposing of requests for judicial review under  7 U.S.C. § 2023(a)(15) when there are no genuine issues of material fact.  De Jung Yun v. U.S., 63 F.Supp.2d 578, 581 (E.D. Pa. 1999), citing Freedman v. United States Dep't of Agric., 926 F.2d 252, 261 (3d Cir. 1991)(concluding that a "de novo review is compatible with a summary judgment disposition if there are no material facts in dispute").

The Court's review under 7 U.S.C. § 2023(a)(15) consists of two parts.  First, the Court must determine whether a violation has occurred, then it must determine whether the sanction imposed is appropriate.  "The standard of review for the imposition of a sanction under SNAP is whether the Secretary's action was arbitrary or capricious, i.e., whether it was 'unwarranted in law or without justification in fact.'"  Atl. Deli & Grocery v. U.S., No. 10-4363, 2011 U.S. Dist. LEXIS 55395, at *15 (D.N.J. May 23, 2011)(citing Willy's Grocery v. U.S., 656 F.2d 24, 26 (2d Cir. 1981).

**IV.    DISCUSSION**

In the instant matter, the Market does not challenge the agency's determination that a violation occurred; therefore, I do not need to address the first stage of review under SNAP.  Moving on to the second stage of review, I must determine whether the agency's decision to disqualify the Market from SNAP participation was arbitrary and capricious. While the decision to permanently disqualify Plaintiff from participation in SNAP is a harsh one, I find it is appropriate under the law.

Trafficking carries a mandatory penalty of permanent disqualification from SNAP upon "the first occasion or any subsequent occasion of a disqualification based upon . .

.trafficking in coupons." 7 U.S.C. § 2021(b)(3)(B).  Only one exception is provided to this mandatory disqualification.  The Department of Agriculture may impose a civil monetary penalty in lieu of disqualification if the agency finds "substantial evidence that such store…had an effective policy and program in effect to prevent violations of [the statute] and regulations," and the store was unaware that trafficking was taking place.  7 U.S.C. § 2021(b)(3)(B).

In order to be eligible for a civil monetary penalty instead of permanent disqualification, a store must establish each of the following by substantial evidence:

> Criterion 1:  The firm shall have developed an effective compliance policy as specified in [7 C.F.R.] § 278.6(i)(1); and
>
> Criterion 2:  The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of the violation s cited in the charge letter sent to the firm; and
>
> Criterion 3:  The firm had developed and instituted an effective personnel training program as specified in [7 C.F.R.] § 278.6(i)(2); and
>
> Criterion 4:  Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct of approval of trafficking violations…

7 C.F.R. § 278.6(i).

In the instant matter, the agency found that the Market did not meet the above criteria in order to qualify for the civil monetary penalty exception.  After reviewing the administrative record, I find that the agency was correct in determining Plaintiff did not meet the exception.  The Market failed to submit any documentation whatsoever showing that it had an effective compliance policy, that said policy was in operation before the agency issued the charge letter, that it had a training program, or that the Market's owners were not involved in the trafficking.  See 7 C.F.R. § 278.6(i).  In response to the

December 4, 2010 disqualification letter, the Market stated that it would "like to submit a timely reply," but then failed to do so.[2] Further, when the Market appealed its disqualification to the agency on January 30, 2013, it still failed to submit any evidence of a compliance policy or training program, as would be necessary for it to qualify for a civil monetary penalty instead of disqualification under the regulations.

Rather than submitting evidence to prove the four criteria necessary to qualify for the exception, the Market argues that the agency should have imposed a civil monetary penalty instead of disqualification because: (1) the Market had "no prior history of violations"; (2) "the owner depends on the income from this business"; and (3) the Market serves "the Hispanic community as a specialty food store." (A.R. at 83.) Clearly, none of these assertions relates in any way to the criteria set forth in 7 C.F.R. § 278.6(i). As the only possible exception to the permanent disqualification is if the four criteria are met, Plaintiff has failed to produce sufficient evidence to raise a genuine issue of material fact as to the Market's compliance with any of the four criteria set forth in 7 C.F.R. § 278.6(i). Therefore, the agency permanently disqualified the Market in accordance with the statute and regulations in question and the disqualification was not arbitrary or capricious. Accordingly, summary judgment is appropriate in this case.

The Market also argues that the agency violated its due process rights under the Fifth Amendment by depriving it of a property interest without due process of law. (See Pl's Opposition to Mtn for Summ. Jdgmt, pp. 4-7). Specifically, Plaintiff alleges that the

---

[2] It is true that Plaintiff's counsel sent a letter to the agency on December 10, 2010, stating that it wanted to "submit a timely reply" to the December 4, 2010 disqualification letter. However, as set forth in the disqualification letter, Plaintiff had to respond to the disqualification in phone or in writing within ten days, but "[n]o extension of time can be granted for making a request for a [civil monetary penalty] or for providing the required documentation." (A.R. at 44.) Therefore, Plaintiff's "timely reply" to the disqualification would be due within ten days of the disqualification letter, or by December 14, 2012. As the agency did not receive any request for a civil monetary penalty or any required documentation by December 14, 2012, it properly disqualified the Market from SNAP via letter dated January 2, 2013.

agency failed to inform it by a clear statement "how, when and in what specific format to submit sufficient evidence to demonstrate that it had established an effective compliance policy and program to prevent violations of [SNAP]."  (Id., p. 4.)   I find that there was no procedural due process violation in this matter.  7 C.F.R. § 278.6(i) does not require the submission of evidence of an effective compliance program to take place in a specific format.  Also, the charge letter that was received by the Market provided all necessary information as to how and when it must reply in order to request a lesser monetary penalty.  (A.R. at 44-45.)

     Lastly, as pointed out by the Government, and as succinctly stated by my colleague Judge Robreno earlier this year in a similar case, the Market's procedural due process claim must fail "even assuming Defendant's multiple levels of agency review were constitutionally infirm (although Plaintiff points to no evidence contradicting the administrative record, which shows Plaintiff fully availed himself of these safeguards)… This is because the district court is required to review the administrative record de novo…This de novo review purges the taint of any alleged due-process violation at the administrative level."  Guzman v. U.S. Dep't of Agric., No. 12-3039, ECF No. 12 (E.D. Pa. Feb. 19, 2013) (citations omitted).   Thus, even if the agency had in some way violated the Market's procedural due process rights, any such violation is cured by the instant judicial proceeding.  As there is clearly no genuine issue of material fact on the alleged due process violation in this matter, summary judgment is granted in favor of the Government.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

An appropriate order follows.